UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN DELVALLE and KYMBERLEA DURANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>- against -<br><br>THE COCA-COLA COMPANY,<br><br>*Defendant.* | Case. No. 1:24-CV-006163<br><br>Hon. Valerie E. Caproni<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT THE COCA-COLA COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Steven A. Zalesin
Dakotah M. Burns
Julia M. MacAllister
**PATTERSON BELKNAP WEBB &
TYLER LLP**
1133 Avenue of the Americas
New York, New York  10036
Tel:  (212) 336-2000
sazalesin@pbwt.com
dburns@pbwt.com
jmacallister@pbwt.com

*Attorneys for Defendant The Coca-Cola Company*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .............................................................................................................................3

        A.       The Product ...............................................................................................................3

        B.       FDA Regulations .....................................................................................................4

        C.       Preemptive Effect of FDA Labeling Regulations ...................................................6

        D.       Plaintiffs' Allegations ..............................................................................................7

ARGUMENT ...................................................................................................................................8

I.       THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE GBL ................................................................................................................................8

        A.       Plaintiffs Make No Plausible Allegation That Citric Acid Actually Functions as a Preservative in the Product ................................................................8

        B.       Plaintiffs Make No Plausible Allegation That Citric Acid Is Intended to Function as a Preservative in the Product .................................................11

        C.       Plaintiffs Do Not Plausibly Allege That the Citric Acid in the Product Is "Chemically Processed" or Otherwise Artificial ...................................12

II.      PLAINTIFFS' ANCILLARY CLAIMS FAIL AS A MATTER OF LAW ......................14

III.     PLAINTIFFS LACK STANDING TO SEEK AN INJUNCTION ..................................14

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 8, 9, 11

*Becker v. Cephalon, Inc.*,
   2015 WL 5472311 (S.D.N.Y. Sept. 15, 2015) ................................................................ 4

*Broussard v. Sam's West, Inc.*,
   No. 24-CV-4610 (N.D. Cal. July 30, 2024) .................................................................... 2

*Cabrega v. Campbell Soup Co.*,
   2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) ............................................................ 10

*Dwyer v. Allbirds, Inc.*,
   598 F. Supp. 3d 137 (S.D.N.Y. 2022) .......................................................................... 14

*Gonick v. Johnson & Johnson Consumer Inc.*,
   No. 24-CV-312 (E.D.N.Y. Jan. 16, 2024) ...................................................................... 2

*Hawkins v. Coca-Cola Co.*,
   654 F. Supp. 3d 290 (S.D.N.Y. 2023) .......................................................................... 13

*Hu v. Herr Foods, Inc.*,
   251 F. Supp. 3d 813 (E.D. Pa. 2017) ......................................................................... 9, 10

*Indiviglio v. B&G Foods, Inc.*,
   2023 WL 9022866 (S.D.N.Y. Dec. 29, 2023) .............................................................. 13

*Jackson-Mau v. Walgreen Co.*,
   115 F.4th 121 (2d Cir. 2024) ............................................................................... 6, 7, 11

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014) .......................................................................... 14

*Lucas v. Albertsons Cos.*,
   No. 24-CV-4675 (N.D. Cal. Aug. 1, 2024) .................................................................... 2

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................... 14, 15

*Nicotria v. Cab Enters. Inc.*,
   No. 24-CV-5907 (E.D.N.Y. Aug 23, 2024) .................................................................... 2

*Quiroz v. Beaverton Foods, Inc.*,
  2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) ................................................................. 9, 10

*Small v. Welch Foods Inc.*,
  No. 24-CV-3547 (S.D.N.Y. May 8, 2024) .............................................................................2

*Stanzione v. The Hershey Co.*,
  No. 24-CV-3913 (E.D.N.Y. May 30, 2024) ..........................................................................2

*Yu v. Dreyer's Grand. Ice Cream, Inc.*,
  592 F. Supp. 3d 146 (S.D.N.Y. 2022) .................................................................................15

*Zenobia Co. v. Shuda*,
  30 F.2d 948 (E.D.N.Y. 1929) ..............................................................................................12

**Statutes**

21 U.S.C. § 343-1 ..............................................................................................................................6

N.Y. Gen. Bus. L. § 349, *et seq.* ................................................................................................. 3, 8

**Other Authorities**

21 C.F.R. § 100.1(c) .................................................................................................................. 6, 12

21 C.F.R. § 101.22 ................................................................................................................ *passim*

21 C.F.R. § 102.5 ..............................................................................................................................5

21 C.F.R. § 170.3(o) ............................................................................................................. 4, 5, 11

21 C.F.R. § 184.1033(c) ...................................................................................................................4

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................8

Defendant The Coca-Cola Company respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiffs Juan Delvalle and Kymberlea Durant.

## PRELIMINARY STATEMENT

Coca-Cola enhances the flavor of its Minute Maid™ Fruit Punch beverage (the "Product") by including citric acid in the beverage. Coca-Cola expressly discloses the addition of citric acid on the Product's ingredient list, which explains that the function of citric acid is to "PROVIDE[] TARTNESS." Because Coca-Cola did not add any ingredients for the purpose of functioning as preservatives, the Product's labeling also truthfully states that it has "No Preservatives Added."

Plaintiffs, consumers who purportedly purchased the Product, do not and cannot allege that Coca-Cola concealed the presence of citric acid. Plaintiffs note, however, that citric acid (like many ingredients) can sometimes have an incidental preservative effect. Based on that observation alone and no other supporting facts, they accuse Coca-Cola of adding citric acid to the Product with the secret agenda of using it as a preservative. Plaintiffs allege that had they known that citric acid supposedly serves this covert function, they would have never purchased the Product, or would have paid less for it. Plaintiffs thus claim that they have been injured by Coca-Cola's alleged concealment of a "chemically processed" preservative in the Product, despite the fact that the ingredient in question is disclosed on the label and, as the ingredient list confirms, functions to provide tartness—not to act as a preservative.

Plaintiffs' Complaint is just one in a recent slew of copycat pleadings, filed by the same group of plaintiffs' attorneys, that allege—without factual basis—that food or beverage labels are

misleading because citric acid (or another ingredient) serves a secret preservative function.[1] This Complaint, like the others, fails to clear the plausibility threshold for several reasons.

*First*, Plaintiffs offer no factual basis for their foundational claim that citric acid functions as a preservative in the Product.  Plaintiffs allege that citric acid *can* act as a preservative in foods and beverages—but they allege no plausible facts to demonstrate that the citric acid *in this Product* does, in fact, serve that function.  Instead, they simply declare without basis that "[c]itric acid functions as a preservative in the Products."  This conclusory allegation, without more, is facially insufficient to state a plausible claim.

*Second*, even if the citric acid in the Product had some incidental preservative effect, it still would not qualify as a "preservative" under U.S. Food and Drug Administration ("FDA") rules because Coca-Cola added it to enhance the Product's flavor, not to act as a preservative.  FDA pronouncements regarding food labeling have preemptive force and bar claims that seek to use state law to impose labeling requirements that differ from federal requirements.  As FDA has made clear, whether an ingredient qualifies as a "preservative" in a food or beverage turns on its "*intended function*."  And the intended function of citric acid here—to add tartness—is plainly disclosed on the ingredient list.

*Third*, regardless of whether it qualifies as a "preservative," Plaintiffs make no plausible allegation that the citric acid in the Product is "chemically processed" or otherwise unnatural. Plaintiffs do not and cannot plausibly claim that they wish to avoid *any* ingredient that could

---

[1] *See, e.g.*, *Nicotria v. Cab Enters. Inc.*, No. 24-CV-5907 (E.D.N.Y. Aug 23, 2024), ECF No. 1; *Lucas v. Albertsons Cos.*, No. 24-CV-4675 (N.D. Cal. Aug. 1, 2024), ECF No. 1; *Broussard v. Sam's West, Inc.*, No. 24-CV-4610 (N.D. Cal. July 30, 2024), ECF No. 1; *Stanzione v. The Hershey Co.*, No. 24-CV-3913 (E.D.N.Y. May 30, 2024), ECF No. 1; *Small v. Welch Foods Inc.*, No. 24-CV-3547 (S.D.N.Y. May 8, 2024), ECF No. 1; *Gonick v. Johnson & Johnson Consumer Inc.*, No. 24-CV-312 (E.D.N.Y. Jan. 16, 2024), ECF No. 1.

conceivably have a preservative effect. After all, household staples such as salt, vinegar, and lemon juice all may have some incidental preservative effect in a food, and FDA has never required that those substances be labeled as preservatives. Rather, Plaintiffs allege that they wish to avoid "chemically processed" preservatives that are not "naturally derived." They offer nothing but speculation, however, to support their claim that the citric acid in this Product is artificial. Instead they allege that the majority of "commercially produced" citric acid is manufactured through a fermentation process "derivative of black mold," but merely guess—without factual support of any kind—that the same is true of the citric acid in the Product. Courts have routinely rejected such speculative assertions as insufficient to support a plausible claim. In any case, Plaintiffs ignore the fact that the fermentation process described in their Complaint is *itself* a natural process, as FDA regulations confirm.

These defects doom Plaintiffs' claims under New York General Business Law §§ 349 and 350 ("GBL"), as well as their common-law claims for breach of express warranty and unjust enrichment. The Complaint should be dismissed, in its entirety, with prejudice.

## BACKGROUND

### A. The Product

Coca-Cola is a global beverage producer whose portfolio includes the Product. Complaint ("Compl.") ¶ 9. Coca-Cola includes citric acid in the Product to enhance its flavor. *Id.* ¶ 10. The Product's ingredient list discloses citric acid's role as a flavor-enhancing ingredient by stating that it "PROVIDES TARTNESS." *Id.* The label's side and back panel further state that the Product has "NO PRESERVATIVES ADDED." *Id.*

B.      **FDA Regulations**

As relevant here, FDA regulations provide that citric acid is approved for "use[] in food with no limitations." 21 C.F.R. § 184.1033(c). It can fulfill a variety of non-preservative functions, including as an "emulsifier," a "pH control agent," and a "flavor enhancer." *See* 21 C.F.R. § 170.3(o) (8), (11), (23). Because citric acid may not function as a preservative in beverages, FDA has advised manufacturers to declare citric acid as a preservative on products' labeling only "***if*** the citric acid ingredient in these products is functioning as preservative."[2]

FDA's Compliance Policy Guide further explains that an ingredient qualifies as a "preservative" in a food or beverage only if "its ***intended function***" is to improve the shelf stability.[3] Likewise, FDA regulations specify that a "food to which a chemical preservative(s) ***is added*** shall . . . bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function … ." 21 C.F.R. § 101.22(j) (emphasis added). The Compliance Policy Guide lists, by way of example, a label description stating that the ingredient has been "***added as*** a preservative."[4] By contrast, if an ingredient is "***added to*** supplement, enhance, or modify" the product's characteristic flavor—that is, if it is added for the purpose of functioning as a flavor enhancer, like the citric acid at issue here—it need not be labeled as a

---

[2] *See* FDA August 13, 2024, Warning Letter to NRS Enters., Inc., https://tinyurl.com/ttxdudhk (emphasis added); *see also* FDA April 11, 2023, Warning Letter to Juicer Connections, Inc., https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juicer-connections-inc-648714-04112023 (similar letter sent to fruit beverage manufacturer requiring description of citric acid's "function" "if . . . "citric acid [is] used as [a] preservative[]").

[3] *See* FDA, CPG Sec 562.600, Preservatives, https://tinyurl.com/2svs8bbj (last visited Sept. 24, 2024). The Court may take judicial notice of this document because it is a publicly available government source and its accuracy cannot reasonably be questioned. *See, e.g.*, *Becker v. Cephalon, Inc.*, 2015 WL 5472311, at *2 (S.D.N.Y. Sept. 15, 2015) (taking judicial notice of FDA documents because they are "not subject to reasonable dispute").

[4] *See supra* note 3 (emphasis added).

4

"preservative," and instead need only be identified by its "common or usual name." *Id.* §§ 170.3(o)(11); 102.5(a) (emphasis added). This regulatory regime underscores FDA's judgment that only ingredients that are specifically added to food for their preservative function should be labeled as preservatives.

At the same time, FDA recognizes that certain ingredients may have some incidental preservative effect in a food or beverage, even if that is not their primary or intended function. But FDA has made equally clear that such ingredients need not be labeled as preservatives. FDA's definition of "chemical preservative" lists, by way of example, several ingredients that need not be so labeled, even if they happen to have an incidental preservative effect, including "common salt, sugars, vinegars, [or] spices." *Id.* § 101.22 (a)(5). These are all ingredients that, by Plaintiffs' own admission, have a preservative effect in foods or beverages. *See* Compl. ¶ 11 (referring to common preservatives like "salt, sugars, vinegars, [and] spices"). These exclusions make sense—indeed, without this limitation, ***all*** ingredients with even a modest, incidental preservative effect would need to be labeled as preservatives. That would include all acidic ingredients, including household staples like orange juice and lemon juice. FDA avoids this absurd result by instructing that an ingredient's status as a preservative turns on its "intended function," rather than its incidental effects, in a food or beverage.[5]

The labels of Coca-Cola's Minute Maid products conform to this regulatory scheme by disclosing the preservative function of ingredients when appropriate. The ingredient list on Minute Maid's Kiwi Strawberry beverage, for example, includes "CALCIUM DISODIUM EDTA (TO

---

[5] *See supra* note 3.

5

PROTECT TASTE)."[6] But that same ingredient list explains that the citric acid in Minute Maid Kiwi Strawberry "PROVIDES TARTNESS," because while the product contains preservatives, citric acid is not one of them. For the same reason, because the citric acid in the Product provides tartness and does not function as a "preservative," Coca-Cola lists that ingredient as "CITRIC ACID (PROVIDES TARTNESS)."

### C. Preemptive Effect of FDA Labeling Regulations

The FDA labeling rules set forth above displace any non-identical state laws pursuant to the "express preemption clauses" of the Federal Food, Drug and Cosmetic Act ("FDCA"). *Jackson-Mau v. Walgreen Co.*, 115 F.4th 121, 127–28 (2d Cir. 2024); *see also* 21 U.S.C. § 343-1(a) & (a)(3) (mandating that "no State … establish" a "requirement for the labeling of food of the type required by section … 343(k)," which concerns the labeling of preservatives and flavoring ingredients, "that is not identical to" FDA's labeling rules). Notably, a state-law requirement need not **conflict** with the FDCA to be preempted. Rather, state laws are preempted if they "directly or indirectly impose[] obligations" that "[d]iffer" in any respect "from those specifically imposed by or contained in the applicable provision [of the FDCA] (including any implementing regulation)." 21 C.F.R. § 100.1(c)(4). As a result, plaintiffs may bring state-law claims challenging a product label, but only to "enforce violations of state laws imposing requirements identical to those contained in the FDCA." *Jackson-Mau*, 115 F.4th at 127–28  The FDCA's "sweeping" preemption clause "foreclose[s] state law claims"—including under the GBL—that would require

---

[6] *See Kiwi Strawberry*, Minute Maid, https://www.coca-cola.com/us/en/brands/minute-maid/products/lemonades-and-fruit-drinks#accordion-76cb113191-item-c6476ce0a7 (last visited Sept. 24, 2024) (listing CALCIUM DISODIUM EDTA (TO PROTECT TASTE)" as an ingredient in 20-ounce versions of the product, which are viewable by selecting scrolling to "Kiwi Strawberry" and selecting "View Nutrition Facts"). This site is subject to judicial notice for the reasons discussed in note 2, *supra*.

defendants to make "packaging disclosures 'in addition to' the requirements already imposed by the FDCA and its regulations." *Id.* at 131.

### D. Plaintiffs' Allegations

Plaintiffs are New York consumers who claim they purchased the Product "on numerous occasions" between March 2023 and 2024. Compl. ¶¶ 7–8. The Complaint alleges that "research demonstrates that a majority of consumers place importance on 'preservative-free' claims" because they prefer "natural or less processed foods." *Id.* ¶¶ 21–23. According to Plaintiffs, the Product's label is misleading because it includes the claim "No Preservatives Added" even though the Product "contain[s] citric acid—a chemical preservative." *Id.* ¶ 1. They broadly enumerate several reasons why citric acid ***can*** function as a preservative, including the fact that it has "antioxidant and antimicrobial properties" that "deactivate[] enzymes." *Id.* ¶ 16. But they allege no facts to support the supposition that citric acid actually performs this function in the Product.

Plaintiffs further declare that the citric acid in the Product is not "naturally occurring," but "chemically processed . . . through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans." *Id.* ¶ 20. In support of that claim, however, Plaintiffs cite only a 2020 article that states that "more than 90 percent of commercially produced citric acid" derives from *Aspergillus niger*. *Id.* ¶ 20. Again, Plaintiffs offer no authority or factual support for the proposition that the citric acid ***in this Product*** is derived from *Aspergillus niger*. In any case, the journal article cited by Plaintiffs states only that "[c]itric acid is generally produced on a commercial scale either by fermentation or chemical synthesis, although the vast majority (>90%) is produced via fermentation."[7] Plaintiffs do not and cannot explain why fermentation of

---

[7] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 Mycobiology no. 2, 122, 123 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/pdf/TMYB_48_1726854.pdf.

a naturally occurring substance such as *Aspergillus niger* yields an unnatural ingredient. To the contrary, FDA regulations expressly *exclude* from the definition "artificial flavoring" any "fermentation products" derived from a variety of fungal and plant materials. 21 C.F.R. § 101.22(a)(1).

Plaintiffs nevertheless insist that they "suffered an injury in fact and lost money or property as a result of" Coca-Cola's purported failure to disclose citric acid as a "preservative" made from "extensive chemical processing." Compl. ¶¶ 7, 20, 25. On that basis, they allege that Coca-Cola has violated Sections 349 and 350 of the GBL and bring claims for breach of express warranty or, alternatively, unjust enrichment. *Id*. ¶¶ 33–68. They also seek injunctive relief requiring Coca-Cola to modify the Product's labels. *Id.* at 16. These claims are fatally defective and must be dismissed.

## ARGUMENT

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; instead, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**I.     THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE GBL**

    **A.     Plaintiffs Make No Plausible Allegation That Citric Acid Actually Functions as a Preservative in the Product**

The crux of Plaintiffs' GBL claim is that Coca-Cola misled them by failing to disclose that the Product contains the "chemical preservative [citric acid]." Compl. ¶ 1. But they make no plausible allegation that citric acid's function here is, in fact, to act as a preservative in the Product.

8

Instead they cite only generalized statements from third-party sources indicating that citric acid *can* function as a preservative in some products because it has "antioxidant and antimicrobial properties." *Id.* ¶¶ 16-17. As to the citric acid present in this specific Product, Plaintiffs merely declare—without factual support—that "[c]itric acid functions as a preservative in the Products." *Id.* ¶ 18. This naked assertion does not begin to supply the necessary "factual content" to allow the Court "to draw the reasonable inference" that citric acid actually functions as a preservative in the Product. *Iqbal*, 556 U.S. at 678

The court's decision in *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) (applying New York law), is instructive. In *Hu*, the plaintiff alleged that the defendant manufacturer had violated the GBL by representing that its product had "No Preservatives Added," even though the product contained citric acid. *Id.* at 816-17. As here, the complaint relied on various third-party sources to make generalized assertions about citric acid's potential use as a preservative. *Id.* at 816. The court held that these bare allegations, without more, were insufficient to establish that citric acid actually "function[ed] as a preservative in the Products" at issue. *Id.* at 822. The court declined to draw a speculative "chain of inferences that, according to Plaintiff, warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products[.]" *Id.* Because the plaintiff's "speculations [were] not supported by well-pleaded factual allegations," the court dismissed his GBL claims as implausible. *Id.* at 822-23. The same reasoning applies here, and the same result—dismissal—is warranted.

Indeed, in cases where courts have credited plaintiff's allegations about the function of citric acid in a specific product, the plaintiffs have offered at least some well-pleaded facts to substantiate their assertions. In *Quiroz v. Beaverton Foods, Inc.*, for example, the plaintiff attached to her complaint the declaration of a "food scientist" who concluded that "citric acid functions as

9

a preservative in the [Product]" based on, among other things, his analysis of the particular "ingredients of the product" at issue. 2019 WL 1473088, at *7 (E.D.N.Y. Mar. 31, 2019); *see also Cabrega v. Campbell Soup Co.*, 2019 WL 13215191, at *8–10 (E.D.N.Y. Nov. 18, 2019) (plaintiff alleged specific facts and attached declaration from food scientist showing that the proportion of citric acid in the product at issue suggested it would "function as a preservative"). By contrast here, Plaintiffs offer only speculation, not facts, to support their assertion that the citric acid in the Product functions as a preservative.

Recognizing their inability to show that citric acid actually functions as a preservative here, Plaintiffs next insist that citric acid "qualifies" as a preservative even if it does not "function" as one in the Product. *See* Compl. ¶ 19. According to Plaintiffs, because an FDA regulation defines a "preservative" as a chemical that "tends to prevent or retard deterioration," citric acid is a preservative in the Product regardless of whether it actually functions as a preservative. *Id.* (citing 21 C.F.R. § 101.22(a)(5)). Plaintiffs' reasoning contradicts FDA's own interpretation of its labeling requirements. As explained above, FDA has repeatedly informed manufacturers that they should disclose citric acid's preservative function only "***if*** the citric acid ingredient in these products is functioning as preservative."[8] This guidance would make no sense if FDA rules required citric acid to be disclosed as a "preservative" regardless of whether it functions as one.

In short, Plaintiffs offer no "well-pleaded" factual allegations to support their guesswork that citric acid functions as a preservative in this Product. Instead, they ask the Court to adopt a "chain of speculative assumptions" based solely on the fact that citric acid can, in some cases, function as a preservative. *Hu*, 251 F. Supp. 3d at 822. That is not enough to support a "reasonable

---

[8] *See supra* note 2.

inference" that citric acid functions as a preservative in the Product. *Iqbal*, 556 U.S. at 678. And because FDA rules do not require that manufacturers label an ingredient as a "preservative" unless it functions as one, Plaintiffs' insistence that Coca-Cola must describe citric acid as a preservative here—regardless of whether it actually functions as one—is squarely preempted by federal law. *See Jackson-Mau*, 115 F.4th at 131 (state-law claims are preempted if they purport to require "packaging disclosures 'in addition to' the requirements already imposed by the FDCA and its regulations").

B.  **Plaintiffs Make No Plausible Allegation That Citric Acid Is Intended to Function as a Preservative in the Product**

Even if Plaintiffs had plausibly demonstrated that citric acid has some preservative effect in the Product (and they have not), they make no plausible allegation that this ingredient's ***intended*** function is to preserve the Product, as they must to support their assertion that it qualifies as a "chemical preservative." *See supra* at 4–5. While Plaintiffs generally allege that citric acid can function as a preservative, Compl. ¶¶ 11–19, they do not dispute that it can also function as a flavor enhancer. *Id.* ¶ 18. That is precisely the function it serves here—as the ingredient list plainly discloses by stating that the citric acid in the Product "PROVIDES TARTNESS." *Id.* ¶ 10.

Conceding that they cannot plausibly allege that citric acid's intended function is to act as a preservative in the Product, Plaintiffs argue that Coca-Cola's "subjective purpose or intent for adding it" is "immaterial." *Id.* ¶ 18. But they cite no legal authority whatsoever for this assertion, and for good reason—as explained above, FDA has made clear that the "intended function" of an ingredient is not only relevant, but dispositive. *See, e.g.*, FDA Compliance Policy Guide, *supra* note 3 (a preservative should "perform its ***intended function***," and the label should disclose that the preservative has been, e.g., "***added as*** a preservative" (emphasis added)); 21 C.F.R. §§ 170.3(o)(11) (an ingredient is a "flavor enhancer" if it is "***added to*** supplement, enhance, or

11

modify" the product's characteristic flavor (emphasis added)). And here, Plaintiffs do not even attempt to allege (because they cannot) that the intended function of citric acid is anything other than to enhance the Product's flavor. *See* Compl. ¶ 18. Again, because FDA rules do not require Coca-Cola to label flavor enhancers as "preservatives," Plaintiffs' claims to the contrary are preempted by federal law. *See* 21 C.F.R. § 100.1(c)(4) (state-law claims are preempted if they seek to "directly or indirectly impose[] obligations" that "[d]iffer from those specifically imposed by or contained in" FDA regulations).

### C. Plaintiffs Do Not Plausibly Allege That the Citric Acid in the Product Is "Chemically Processed" or Otherwise Artificial

Plaintiffs' allegations fail for an equally fundamental reason: they make no plausible allegation that the citric acid in the Product is "chemically processed" or otherwise unnatural. In their Complaint, Plaintiffs do not and cannot plausibly allege that reasonable consumers wish to avoid *all* ingredients that could possibly have a preservative effect. As explained above, common household ingredients like lemon juice, sugar, vinegar and salt can all have some incidental preservative effect, and FDA has never required that manufacturers disclose those ingredients as "preservatives" on product labels. *Accord Zenobia Co. v. Shuda*, 30 F.2d 948, 948 (E.D.N.Y. 1929) ("The use of salt as a food preservative has long been well known[.]"). If the law were otherwise, lemon juice would need to be listed as a preservative in lemonade. The ingredient list would read: "WATER, SUGAR, LEMON JUICE (TO PROTECT TASTE)." No reasonable consumer would avoid buying lemonade because its lemon juice can have a preservative effect.

To avoid the absurdity of alleging that they prefer to avoid *all* ingredients that might have an incidental preservative effect, Plaintiffs claim that they wish to avoid "chemical preservatives," which they view as less "healthy," less "natural," and more "processed" than products that are free from such preservatives. Compl. ¶¶ 7, 11, 21–25. Specifically, they allege that the citric acid here

12

is not "naturally occurring," but "chemically processed … through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans." *Id.* ¶ 20. In support of that claim, Plaintiffs cite a single journal article that indicates that "more than 90 percent of commercially produced citric acid" derives from *Aspergillus niger*, and then speculate that the same must be true of the citric acid in the Product. *Id*. ¶ 20. Apart from their own conclusory assertion, Plaintiffs offer no factual support for the proposition that that the citric acid **in this Product** is derived from *Aspergillus niger*. Courts in this District repeatedly have rejected such speculative assertions as insufficient to support a claim. *See Indiviglio v. B&G Foods, Inc.*, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023) (dismissing complaint and holding that a "generalized statement about an industry is not enough to adequately allege the citric acid *used in the Product* is industrially produced and not derived from fruit" (emphasis in original) (citation omitted)); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 305 (S.D.N.Y. 2023) (dismissing complaint based on "bare, unsubstantiated allegations about the *possibility* that the Product contains artificial DL-Malic acid, without any additional factual support from product testing").

Just as important, the journal article cited by Plaintiff states only that "[c]itric acid is generally produced on a commercial scale either by fermentation or chemical synthesis, although the vast majority (>90%) is produced via fermentation."[9] Plaintiffs altogether fail to explain how the fermentation of a naturally occurring substance such as *Aspergillus niger* would yield an unnatural ingredient. In fact, FDA rules expressly **exclude** from the definition of "artificial flavoring" any "fermentation products" derived from various fungal and plant material. 21 C.F.R. § 101.22(a)(1). The Complaint thus alleges no facts to support either (1) Plaintiffs' speculation

---

[9] A. Hesham, *supra* note 7.

that the citric acid in the Products is manufactured with *Aspergillus niger*; or (2) Plaintiffs' conclusion that this fact alone makes the citric acid unnatural. Each of these deficiencies is fatal to their Complaint.

## II.  PLAINTIFFS' ANCILLARY CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' ancillary claims fail for the same reasons their GBL claims do: they have not plausibly alleged that the "No Preservatives Added" claim is false or misleading in any way. *See Koenig v. Boulder Brands*, Inc., 995 F. Supp. 2d 274, 289 (S.D.N.Y. 2014) (breach of warranty requires plaintiff to plausibly allege that seller made a false "affirmation of fact or promise . . . , the natural tendency of which was to induce the buyer to purchase" the product, "and that the warranty was relied upon to the plaintiff's detriment"). And Plaintiffs' unjust enrichment claim simply "duplicates" their GBL claims and should be dismissed for that reason. *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 157 (S.D.N.Y. 2022).

## III.  PLAINTIFFS LACK STANDING TO SEEK AN INJUNCTION

Plaintiffs also lack Article III standing to pursue injunctive relief because they fail to allege a "real or immediate threat" of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* Rather, Plaintiffs must plausibly allege that they will be similarly "harmed" by the Product's label "in the future." *Id.*

Here, Plaintiffs claim to have learned, after purchasing the Product, that citric acid serves a preservative function. *See* Compl. ¶¶ 8–9. Thus, if they see citric acid on the Product's ingredient list in the future, they will necessarily understand that the Product contains an ingredient that they consider to be a preservative. Accordingly, Plaintiffs cannot be deceived by the Product's label

14

again, and they lack standing to seek an injunction. *Nicosia*, 834 F.3d at 239. Further, Plaintiffs do not even allege any intent to purchase the Product in the future. This "failure to allege an actual intent to purchase the product again amounts to a failure to establish a likelihood of future injury sufficient to show standing." *Yu v. Dreyer's Grand. Ice Cream, Inc.*, 592 F. Supp. 3d 146, 166 (S.D.N.Y. 2022).

## CONCLUSION

For the foregoing reasons, Coca-Cola respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: October 9, 2024

                                      Respectfully submitted,

                                      By: */s/ Steven A. Zalesin*

                                      Steven A. Zalesin
                                      Dakotah M. Burns
                                      Julia M. MacAllister
                                      PATTERSON BELKNAP WEBB & TYLER LLP
                                      1133 Avenue of the Americas
                                      New York, NY 10036
                                      (212) 336-2000
                                      sazalesin@pbwt.com
                                      dburns@pbwt.com
                                      jmacallister@pbwt.com

                                      *Attorneys for Defendant The Coca-Cola Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2024, a copy of the foregoing was filed electronically.  Parties may access this filing through the court's system.

                                        /s/ *Julia M. MacAllister*