UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

JUAN DELVALLE and KYMBERLEA
DURANT, individually and on behalf of all others
similarly situated,

                           Plaintiff,

             -against-

THE COCA-COLA COMPANY,

                       Defendant.

-------------------------------------------------------------- X

:          24-CV-6163 (VEC)

:          OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Defendant Coca-Cola Company sells fruit punch with a label that reads "No Preservatives Added." Plaintiffs allege that the label is false because the fruit punch contains citric acid, which they assert is a preservative. They bring claims pursuant to New York General Business Law ("NYGBL") §§ 349 and 350 as well as for breach of express warranty and unjust enrichment. Defendant moved to dismiss, arguing that Plaintiffs have failed to state a claim. Defendant's motion is DENIED.

## BACKGROUND[1]

Defendant Coca-Cola Company formulates, advertises, manufactures, and sells Minute Maid Fruit Punch (the "Product"). Compl, Dkt. 1, ¶¶ 1, 9. On its carton, the Product features prominently the phrase "No Preservatives Added." *Id.* ¶ 10. The side of the carton lists, in finer print, the Product's ingredients. *Id.* Citric acid is listed as an ingredient, along with the parenthetical "(PROVIDES TARTNESS)." *Id.*

---

[1]     The Court assumes the truth of the well-pled factual allegations in the Complaint for purposes of deciding the Motion to Dismiss. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

Citric acid can act as a preservative because it deactivates enzymes in food that oxidize and break down molecules. *Id.* ¶ 16. It also has antimicrobial properties that inhibit the growth of some types of bacteria and mold. *Id.* ¶ 17. An FDA guidance document lists citric acid as an example of a preservative, *id.* ¶ 13, and the FDA has sent warning letters to other manufacturers advising them that they may be required to disclose the use of citric acid in their products to the extent it acts as a preservative. *Id.* ¶ 15; FDA August 13, 2024, Warning Letter to NRS Enters., Inc., https://tinyurl.com/ttxdudhk; FDA April 11, 2023, Warning Letter to Juicer Connections, Inc., https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juicer-connections-inc-648714-04112023.[2]

According to Plaintiffs, citric acid functions as a preservative in the Product. Compl. ¶ 18. The specific type of citric acid contained in the Product is chemically processed and derived from black mold. *Id.* ¶ 20. Consuming this type of citric acid can trigger allergies and diseases in humans and can cause negative side effects such as muscle pain, joint pain, and shortness of breath. *Id.*

Plaintiffs Juan Delvalle and Kymberlea Durant, on behalf of themselves and a putative class, assert that they purchased the Product in reliance on its representation that it had no preservatives added. *Id.* ¶¶ 7–8. If they had known that the Product did, in fact, contain a preservative, they either would not have purchased the Product or would only have purchased it at a lesser price. *Id.*

---

[2]    The Court takes judicial notice of these agency documents because they are publicly available and their existence is not subject to reasonable dispute. *See Becker v. Cephalon, Inc.*, No. 14-CV-3864, 2015 WL 5472311, at *3 (S.D.N.Y. Sept. 15, 2015) (collecting cases for the proposition that FDA documents, including those published on the FDA's website, are judicially noticeable).

Plaintiffs allege violations of NYGBL §§ 349 and 350 and breach of express warranty. *See* Compl. ¶¶ 33–62.[3]  In the alternative, Plaintiffs bring a claim of unjust enrichment.  *Id.* ¶¶ 63–68.  Defendant moved to dismiss the Complaint in its entirety for failure to state a claim. *See* Def. Mot. (the "Motion to Dismiss"), Dkt. 15.

## DISCUSSION

### I.    Standard of Review

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff, *see Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted), and "draw[s] on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679.  The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### II.   Plaintiffs Have Stated a Claim Under the NYGBL

To state a claim under §§ 349 and 350 of the NYGBL, Plaintiffs must allege that "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff[s] [were] injured by reason of defendant's deceptive or misleading conduct."  *Myers v. Wakefern Food Corp.*, No. 20-CV-8470, 2022 WL 603000, at *3 (S.D.N.Y. Mar. 1, 2022) (citation omitted).  The Motion to Dismiss focuses solely on the second element, which requires Plaintiffs to show that Defendant's

---

[3]    The Complaint also includes a demand for injunctive relief, *see* Compl. ¶¶ 46, 55, which Plaintiffs have since withdrawn, *see* Pl. Mem., Dkt. 21, at 1 n.1.

advertising was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). While a court may make this determination as a matter of law, *id.*, it is "generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases).

Defendant presents three arguments why its "No Preservatives Added" label was not misleading, none of which is persuasive.

First, Defendant argues that because the Complaint fails to allege facts to support its assertion that citric acid acted as a preservative in the Product, it has failed adequately to allege that the "No Preservatives Added" claim was misleading. Def. Mem., Dkt. 16, at 8. The Court disagrees. The Complaint contains specific, non-conclusory allegations that: (1) the Product contains citric acid, Compl. ¶¶ 1, 7–8, 10; (2) the FDA has described citric acid as a preservative in similar contexts, *id.* ¶¶ 11–15; and (3) citric acid has preservative qualities when used in food and beverages, *id.* ¶¶ 16–17. In short, the Complaint alleges sufficient facts from which the Court, drawing all plausible inferences in favor of the Plaintiffs (as it must at this stage), can plausibly infer that citric acid "functions as a preservative in the Product[]." *Id.* ¶ 18. In so finding, the Court joins a slew of other courts that have reached the same conclusion at the motion to dismiss stage in materially similar cases. *See, e.g.*, *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6–*7 (S.D.N.Y. Mar. 28, 2023) (holding that NYGBL claims were sufficiently alleged when defendant represented that its products had "No Preservatives" when they contained citric acid); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (plaintiff sufficiently alleged citric acid was a preservative when she had pled "detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters

4

that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages"); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 297 (S.D.N.Y. 2022) ("The Court thus rejects Defendant's argument that the label is not misleading as matter of law merely because Plaintiff has not alleged that ascorbic acid and citric acids actually had preserving functions in the Product, as opposed to their other identified functions.").

Second, Defendant argues that, even if citric acid is a preservative, it was not misleading to market the Product as preservative-free because the Complaint does not allege that Defendant intended for citric acid to function as a preservative in the Product. Def. Mem. at 11. Defendant's argument is unpersuasive because Plaintiffs are not required to plead facts giving rise to an inference of scienter in order to state a claim pursuant to §§ 349 and 350. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Defendant's observation that some FDA guidance appears to suggest that intent may be relevant for determining whether a substance is a "preservative" within the meaning of the Federal Food, Drug and Cosmetic Act ("FDCA"), *see* Def. Mem. at 11–12, sheds no light on how to interpret the NYGBL. It is enough, for purposes of the NYGBL, for Plaintiffs to allege that citric acid is a preservative and is present in the Product. *See Mason*, 515 F. Supp. 3d at 145 ("[W]hether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer.").

Finally, Defendant argues that its "No Preservatives Added" claim is not misleading because Plaintiffs have not pled sufficiently that the citric acid in the Product is "chemically processed" or is otherwise unnatural. Def. Mem. at 12. As an initial matter, the Court is skeptical that such an allegation is necessary, given that Defendant is accused of falsely stating

that there are no preservatives added to its Product, not that there are no chemically processed preservatives added.  Defendant's argument that no reasonable consumer "would avoid buying a product, or pay less for it, simply because it contains natural and healthy ingredients that might incidentally help to preserve the [P]roduct's shelf life" is the type of conclusory assertion about consumer behavior that is inappropriate for the Court to adjudicate as a matter of law at this stage.  Def. Reply, Dkt. 22, at 8–9.  Regardless, the Complaint does, in fact, contain non-conclusory allegations that the citric acid in the Product is not "naturally occurring" but, rather, is "commercially manufactured" through "a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans."  Compl. ¶ 20.  To the extent the artificiality of the citric acid contained in the Product ends up mattering to Plaintiffs' claims under §§ 349 and 350, the allegations in the Complaint are sufficiently specific for Defendant to probe through discovery.  If Defendant continues to believe this is a winning argument (and the Court expresses no view one way or the other on that point), it can press the argument on summary judgment or at trial.

### III.    Plaintiffs' Claims Are Not Preempted

Defendant also argues that Plaintiffs' NYGBL claims are preempted by federal law.  The Supremacy Clause of the Constitution "invalidates state laws that interfere with, or are contrary to, federal law."  *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (internal quotation marks omitted).  Federal law may preempt state law "either by express provision, by implication, or by a conflict between federal and state law."  *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).  In all preemption cases, the Court "start[s] with the assumption that the historic police powers of the state were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  As a result, "the party asserting that

6

federal law preempts state law bears the burden of establishing preemption." *In re Methyl*

*Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013).

Defendant's argument is rooted in the express preemption clause of the FDCA, which

bars states from adopting "any requirement for the labeling of food of the type required by . . .

section . . . 343(k) of this title that is not identical to the requirement of such section,"  21 U.S.C.

§ 343-1(a)(3), and associated regulations that preempt state laws that "directly or indirectly

impose[] obligations" that "[d]iffer" from those contained in the FDCA, 21 C.F.R. § 100.1(c)(4).

Section 343(k), in turn, requires that any product containing any "chemical preservative" must

"bear[] labels stating that fact." 21 U.S.C. § 343(k).  Defendant argues that its labeling complies

with § 343(k) because citric acid, as it is used in the Product, is not a chemical preservative.  Def.

Mem. at 6–7, 11.  Defendant cites several pieces of evidence to support its position.  First, it

notes that other FDA regulations recognize that citric acid may fulfill a variety of non-

preservative functions, including as a "flavor enhancer." 21 C.F.R. § 170.3(o)(11).  Second, it

cites to several warning letters from the FDA to other food manufacturers that suggest that citric

acid qualifies as a preservative under § 343(k) only if the manufacturer intends for it to serve a

preservative function.  *See* FDA August 13, 2024, Warning Letter to NRS Enters., Inc.,

https://tinyurl.com/ttxdudhk (FDA warning letter to a food manufacturer that "if the citric acid

and ingredient in [its] products is functioning as a preservative, the preservative function must be

declared"); FDA April 11, 2023, Warning Letter to Juicer Connections, Inc.,

https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-

letters/juicer-connections-inc-648714-04112023 (similar letter to another manufacturer requiring

description of citric acid's "function" if "citric acid [is] used as [a] preservative[]").  Defendant

argues that because the Product's label states that the purpose of the citric acid is to provide

tartness, Compl. ¶ 10, citric acid, as used in the Product, cannot be considered a "preservative" within the meaning of the FDCA.  Def. Mem. at 4–7.

Setting aside whether Defendant's interpretation of § 343(k) is correct and whether it is appropriate, at this stage, to adjudicate factual disputes about the function of citric acid in the Product, Defendant's argument fails for a more fundamental reason.  At best, Defendant has shown that § 343(k) does not affirmatively require it to adopt labeling that warns consumers that the Product contains a "chemical preservative."  21 U.S.C. § 343(k).  But §§ 349 and 350 of the NYGBL do not set forth affirmative labeling requirements; they simply require that companies not engage in practices that are "deceptive or materially misleading."  *Myers*, 2022 WL 603000, at *3.  That a company may not be *required* to adopt a particular label says nothing about whether the labels that it *chooses* to adopt are deceptive or misleading.  Accordingly, this Court — like many other courts that have considered this question — finds that § 343(k) of the FDCA does not preempt §§ 349 and 350 of the NYGBL because the state and federal statutes do not conflict.  *See Simeone v. T. Marzetti Co.*, No. 21-CV-9111, 2023 WL 2665444, at *8 (S.D.N.Y. Mar. 28, 2023) ("Plaintiffs' claims are not preempted by the FDCA because they do not address the sufficiency of Defendant's labelling under the FDCA but rather its truthfulness."); *Ashour v. Arizona Beverages USA LLC*, No. 19-CV-7081, 2020 WL 5603382, at *3 (S.D.N.Y. Sept. 18, 2020) ("Plaintiff's state law claim that Defendants deceptively labeled their beverages as containing '[n]o [p]reservatives' does not conflict with the federal requirement, which only mandates identifying the preservative."); *In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018) (plaintiffs' claims were not preempted because plaintiffs did not "seek to impose new standards or requirements in connection with their consumer protection claims. They simply want to ensure that [the defendant's] labels are truthful.").

**IV.    The Complaint States a Claim for Breach of Express Warranty**

To state a claim for breach of express warranty under New York law, a plaintiff must

plead (1) "a material statement amounting to a warranty," (2) "the buyer's reliance on this

warranty as a basis for the contract," (3) breach, and (4) injury.  *Angeles v. Nestlé USA, Inc.*, 632

F. Supp. 3d 309, 317 (S.D.N.Y. 2022).  Defendant's argument that Plaintiffs fail to state a claim

for breach of express warranty tracks its argument that Plaintiffs did not allege adequately a

violation of the NYGBL:  it claims that citric acid is not a preservative and did not function as

one in the Product and, hence, that it did not breach its warranty that the Product had no

preservatives added.  *See* Def. Mem. at 1–3.  The Court rejects that argument as to the breach of

warranty claim for the same reasons it rejected it as to the NYGBL claims.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.  The Clerk of

Court is respectfully directed to terminate the open motion at Dkt. 15.

**SO ORDERED.**

**Date:  May 22, 2025**
       **New York, New York**
                                      **VALERIE CAPRONI**
                             **United States District Judge**

9
